(72 App. Div. 270.)

BENSON v. HUDSON RIVER WATER POWER CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. PRIVATE ROAD—USE BY THE PUBLIC—IMPLIED INVITATION.
   Defendant, in building a dam, obstructed a highway, and for its convenience joined its road on its own premises with the highway, and for the convenience of the public it made a new road around the obstructed place. Travelers sometimes used the road built for defendant's convenience. There was no express invitation to the public to use this latter road, nor an express prohibition. *Held*, that the question whether defendant impliedly invited travelers to use the road constructed for its own convenience was for the jury.

2. SAME—LIABILITY OF OWNER.
   Where there is an implied invitation on the part of the defendant to the public to use a road constructed by the defendant for his own use, he is liable for injuries received because of his want of reasonable care in keeping the road in repair.

3. SAME—ASSUMPTION OF RISK.
   A traveler using a private road assumes the risks from the obvious dangers.

4. SAME—DEFENDANT'S NEGLIGENCE—EVIDENCE—SUFFICIENCY.
   A traveler, familiar with a private road, attempted to pass it on horseback in the daytime, when defendant's works on and around it were in operation. As he passed over a pipe in the road connected with a boiler house, steam escaped from the pipe, frightening his horse, causing him to fall off. The pipe was covered with manure and planks and sand. There was no evidence as to how the steam found its way through the pipe, nor was it shown that it had ever come from that place before. Subsequently, the pipe was uncovered, and found to be perfect. There was no evidence of any negligence on defendant's part in the construction of the pipe. *Held*, that there was no evidence of defendant's failure to exercise reasonable prudence and care to submit to the jury.

5. SAME—INSTRUCTIONS—REFUSAL TO GIVE.

In an action by a traveler for injuries sustained by passing over a private road through steam escaping from a pipe connected with a boiler house and placed across the road, an instruction that, the pipe not being across a public highway, defendant was prosecuting its work on its own premises in the exercise of a legal right, was improperly refused, as leading the jury to believe that defendant was a trespasser in running the pipe across its private road, as it would be if it had been across a public highway, and therefore liable without proof of negligence.

Appeal from trial term.

Action by Henry R. Benson against the Hudson River Water Power Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Appeal from a judgment and order denying a new trial. The plaintiff was thrown from a horse he was riding, and, as the jury found, was injured by the fall. At the time he was thrown he was riding over a road constructed by defendant on its own lands to facilitate the work it was prosecuting in building a stone dam across the Hudson river. The road ran over and along the stone dam so being constructed, and was only sufficiently wide to permit the passage of loaded wagons. It was in constant use by defendant, who had some 50 teams hauling materials to be used on the dam. Piles of dirt were on each side of the roadbed. Derricks were in use lifting and swinging material near by or over the road. Steam portable and stationary engines were stationed near by and adjacent to this road. Steam pipes from these engines emitted steam at all times during working hours. Steam whistles were used for signals, and the confusion and bustle attending a great work was apparent to everyone approaching to pass over this roadway. From one engine an iron steam pipe an inch in diameter crossed under the road, buried some 10 or 12 inches, covered with manure, then with plank and sand. Under the roadbed the pipe was solid; that is, there was no union of pipes under the dirt across the road, and some eight feet from the road the pipe was joined by a union to another pipe of the same dimension. By the side of the road next to the engine building was an upright exhaust pipe, which emitted steam whenever the engine was working. The steam pipe which crossed the road was a necessary and useful appliance in the conduct of the defendant's business. The defendant, in joining its dam to the bank, cut across an old highway. For its own convenience the defendant connected this road upon its own premises with the old highway, both above and below the point where the old highway was obstructed. The defendant also made a new road to go around this obstructed place for the convenience of the traveling public. This new road was longer, left the old highway a mile or so below the point of obstruction, and came back a half mile or so above the point. Travelers along the old highway sometimes went by way of the road built for defendant's convenience. It does not appear that any one was expressly invited or expressly forbidden to pass over defendant's road and dam.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Ashley & Williams, for appellant.

J. Edward Singleton (J. A. Kellogg, of counsel), for respondent.

KELLOGG, J. Under the proofs in this case, I think it was a question for the jury whether there was not an implied invitation to travelers along the old highway to pass around the obstruction therein over the narrow roadway constructed by defendant for its own convenience; and the rule which measures liability in cases where such invitation is given must apply if the jury should find that there was

the implied invitation. That rule is reasonable prudence and care. Larkin v. O'Neill, 119 N. Y. 221, 23 N. E. 563; Flynn v. Railroad Co., 142 N. Y. 439, 37 N. E. 514; Hart v. Grennell, 122 N. Y. 371, 25. N. E. 354. What is reasonable prudence and care is to be determined by the facts and circumstances of each separate case. In the case before us, it was obvious to every one approaching to pass over the roadway that the passage was unsafe. It was obvious that it was not a highway; that it was narrow, and ran through defendant's works; that heaps of earth existed there; derricks and steam engines were in use in close proximity to this road; that there was more or less noise and confusion all about,—the necessary accompaniment of the employment of a large number of men and teams, steam engines, and machinery. All these obstructions and obvious perils were a part of the surroundings, and the defendant could not be held to be negligent in any duty towards a traveler by not removing these obstructions to safe travel and making the perils less. The defendant was prosecuting its work as it had a right to do. The traveler must surmount the difficulties if he would pass that way. The risk from things obvious, and the dangers to himself, his team, or horse which might be reasonably anticipated in passing over this road, were all assumed by the traveler. The plaintiff, familiar with these surroundings, obstacles and dangers, attempted to pass along this road on horseback in the daytime, when the works were in full operation. As he came along in the vicinity of the spot where the steam pipe from one of the engines. crossed under the road he says:

"I believe at the time I was working for defendant. I went by this building, and the boiler and hoister were in operation, and this pipe laid across. the road as it did when I was hurt. * * * There was no more than one traveled track where I fell off. There was only room enough for one team. Just one track of a wagon there. That track was pretty close to the building. * * * I was in the track at the time. I was in the road. I suppose that is what you call the track. * * * This steam enveloped me; it came from the pipe. * * * I know what part of the pipe it came from. It came out from the pipe in the track,—in the road. I saw it when it came up; it came in a gush in my face; right between the tracks in the highway. There is only one track there. There is a track for each wheel. I will swear the steam came out of the pipe right up in the road. This was a pipe they used for a siphon pipe to force the water up in the barrel for the injector to take it."

The steam so coming from the pipe plaintiff says frightened his horse, and he fell off. The plaintiff is the only witness of the accident; and, as he states here just how it happened, it would seem that the sole cause of the horse's fright was a jet of steam from a steam. pipe buried out of sight in the road. There is no explanation in the testimony as to how this steam jet found its way up through between the wagon tracks in the center of the road. The only theory possible is that there was a break in the pipe under the road. It was not shown that steam was ever known to come from that spot before. The pipe was subsequently uncovered and found to be unbroken and perfect. The jury was instructed that defendant had a right to run its pipe across the road in this way, and had a right also to use it in the manner it was used. Without doubt this was a correct instruction, for this was not a highway, and defendant was not a trespasser in-

·using its own property for its own purposes.  There was no evidence ·of any fault in construction or any knowledge in defendant of any defect in the pipe from which at this point in the center of the road a .jet of steam might have been foreseen or danger therefrom apprehend-·ed.  This, therefore, disposes of the charge of negligence on defendant's part.  There is no proof of failure on the part of defendant in ·the exercise of reasonable prudence and care.  One witness (a brother ·of plaintiff) testified to having seen steam escaping from some leaky ·unions on the pipe outside of the road, both before and after the .accident.  It was proven that the nearest of these unions was some ·eight feet beyond the outer side of the road, and the same witness says, "I never saw any horses get frightened at this steam escaping." The court instructed the jury that they had no right to charge defendant with negligence in this case because of any escaping steam outside of the road, and in this we think the learned trial court was :right.  He says, in explanation of his general charge, "I told the jury, if the beaten track was substituted, and if the escape was at the side, defendant is not liable for it."  So it remained only for the jury to predicate negligence upon the fact that a jet of steam came up from ·between the wheel tracks in the road; and, as we have seen that there was no proof that steam ever came up in that way before, and there was no proof of defect either in construction or in the pipe known to the defendant, and no proof of knowledge of any danger of this nature to be apprehended, it was error to submit the case to the jury with instruction that they had a right to find defendant negligent in not forestalling accident from a jet of steam rising for the first time between the wagon tracks.

The court was asked to charge the jury as follows:  "That the pipe, not being in or across a public highway, the defendant was prosecuting its work upon its own premises in the exercise of a legal right."  This request the court refused.  This, we think, was error. The converse of that proposition carries the implication to the jury ·that defendant was a trespasser in running this pipe across this road, .as, no doubt, it would have been had the road been a public highway; and, being a trespasser, it would have been unnecessary to prove negli-. gence.  That the jury might have so understood the rule of liability ·to be is apparent from the request which followed, viz.:

"That defendant had a right to use the premises for the purposes which it was doing.  The property being in such condition as to plainly indicate that the public right of use was interrupted, the obligation of defendant was different from what it would have been had the pipe been in a public street."

This request was refused.  This refusal plainly declared to the jury that this road was, so far as plaintiff was concerned, to be deemed a public highway, and the defendant was a trespasser in running a steam pipe under and across it, and therefore liable for any injury to plaintiff resulting therefrom.  That this was error is too plain for argument.

We think, aside from these errors in the charge, that there was no ·evidence whatever presented from which a jury had a right to find a lack of reasonable prudence and care on the part of defendant; and a verdict should have been directed dismissing the action on the merits.

The judgment should be reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event. All concur; SMITH, J., in result.